Case number 16-4235, Southern Glazers Distributors of Ohio LLC et al. v. The Great Lakes Brewing Company et al. Oral argument not to exceed 15 minutes per side. Mr. Mark Salini for the attorney and may proceed. May it please the court, I'm here on behalf of Great Lakes Brewing Company, the appellant, the defendant below. I've reserved three minutes for rebuttal time. I'm going to start with the first of multiple errors of law committed by the district court in ruling that Southern Glazers, the plaintiff below, deserved an injunction against my client. And the quickest one is irreparable injury. It's completely axiomatic that irreparable injury is a necessary finding in order to grant an injunction. Southern Glazers' entire case rests on the notion that it has to stop what it alleges is a wrongful termination, a termination without just cause. However, the party's agreement, Section 10D, has a specific liquidated damages provision, and it's a liquidated damages provision that specifically contemplates the harm that the plaintiff tried to enjoin. In other words, termination without just cause. It's a one times gross trailing multiple, very simple formula. It doesn't have a number. You know the argument goes here from your opponents that it doesn't have a number, it's not calculable kind of thing. Is that legitimate? I don't think so because it has a formula. And the formula ties, and this is very, very common in the industry, to simply say if you sold X number of cases per beer with a $4 markup, we multiply that, and in this case times one, for the prior 12-month period. So it's a very simple formula. Are you arguing this first because you think it's the simplest argument or because you think it's your best argument? I think I can get through it very quickly, Your Honor, but I'm happy to turn to Section 84F. If you look at Section 84F, and I'm going to say, by the way, it's the franchise law, it's actually the Ohio Alcohol Beverages Franchise Act, and I'm going to use the citation instead of 1333.8485, I'm just going to say Section 84, Section 85. There are two areas of law in our view in the interpretation of Section 84F. When it comes to franchise, the relationship is governing in a three-tier system. You've got this manufacturer at the top, that's the producer, then you have the wholesale distributor, they sell to the retailer, the retailer sells to the consuming public. And the relationship in this state is governed partially by the franchise law. And the franchise law can do one of three things. It has one bucket of things that says you have to do this. It has a second bucket that says you can't do this. And everything else is still left to the discretion of the parties to contract. And in fact, Section 83 of the agreement specifically instructs, it's one of those, you shall, the parties shall enter into an agreement setting forth their rights and obligations. Now you take that command, and this court has recognized that the parties can contract for additional protections, as long as they don't conflict with the franchise law. So then you come to the transaction, and you're familiar with the facts. Glazers had been our distributor. Southern Glazers is a change of control entity after the parent company of the Ohio entity was merged into a company that is now majority owned by different owners. So this was clearly a change of control. The district court found it. In that case, the only way there's a substantial question on the law of whether we have the right to approve or disapprove the business is whether the contractual provision calling for approval is invalid. And if you look at the first section where it talks about the transfer of a business, you will search in vain for an absolute prohibition there. And that's the only way there's a serious question, if there's an absolute prohibition. And in fact, if you look elsewhere in Section 84, the legislature knew exactly how to do that. There's plenty of things that are very simple. Instead, when it comes to a sale or transfer of the business, what the statute says is that the manufacturer has to respect the rights, the rights of the wholesaler. What are those rights? They don't arise in a vacuum. The rights arise from that Section 83 mandatory contract between the parties. And here the contract said that if there was going to be a change of 20% or more, we have the right to approve it. And then it also says that in doing that, we have to act in good faith. Well, if it was an absolute prohibition, there's no discretion or no action to apply a good faith standard to whatsoever. Did Judge Watson find that you did not consent in good faith? We were not. That's a great question, Your Honor. We were not given the opportunity to exercise our good faith or anything else. So there was no finding of bad faith? And there couldn't have been because we were never given the opportunity to review and approve the transaction. The franchise statute, I mean, the contract provides for good faith. But the franchise statute, subsection F, also says that your consent must be given in good faith in accordance with the reasonable standards of fair dealing. Was there a finding by Judge Watson that you violated the good faith standard of sub F and the reasonable standard of fair dealing of sub F? No, Your Honor. And that's because... Isn't that crucial to find a violation of the Franchise Act? The answer is yes. Yes, of course. And here, Southern Glazer's position from even before closing was, we're going to rely on a case called Jameson Cross. It's a 1996 district court. We recognize it's a district court case. It doesn't involve a contract. It's also not precedentially binding on us. It wasn't precedentially binding on Judge Watson. We understand your argument on that. Okay. And because of that, we were never given the opportunity to review and approve. And of course, then, if there had been an opportunity to review and approve, then that would have been tested for good faith. All right. I didn't tell you your strongest argument is Judge Watson didn't apply the terms of the statute. Right. He just found a violation. I mean, if there were fact findings here that there were violations, I might find no abuse of discretion. But when he appears to apply the wrong legal standards, it appears to me that it might be clearly erroneous. Your Honor, that's our position, is that this was a clearly incorrect legal standard applied, and therefore it was, per se, an abuse of discretion to enter the injunction. So, yes, we completely agree. Because any time a violation of the law naturally amounts to an abuse of discretion. It's more like a de novo review because it's a matter of law. Is that what your argument is? That's right. We believe there were multiple errors of law committed by Judge Watson. You're not according discretion. Right. Can you tell me the practical implications here? Southern Glacier is the largest distributor of wine and liquor, I guess, in the United States. I mean, it's the Goliath. But you don't want them to distribute your beer. And is it because they don't consider the beer business seriously? What's behind all this? It seems like the largest distributor would be a good distributor for your microbrewery. But what's the practical problem here? So Glacier's Inc. was a wine and spirits and beer distributor. They actually distributed Miller Coors in multiple markets. Now we've got Southern Glacier. Is that your problem, that their beer is not their expertise? I recognize this is a contract interpretation thing. I'm just trying to find out. It went to mediation. It was unsuccessful. I'm trying to figure out why. Yeah, no, I understand that, Your Honor. And yes, really, the danger here is that when you have a wine and spirits focused house that really looks at beer as a completely, not even secondary, tertiary, it's such a low priority. Southern Glacier is because they are the Goliath in the industry. They're focused on the Diageo's and the Gallo's of the world. That's your concern, although there's no performance deficiency, at least at this point. But you're worried that that might be the problem. Yes, and the point here, though, is that we were never given the opportunity to even go through the process where we would get into examining good faith, whether it was reasonable to approve or disapprove, because Southern Glaciers from day one took the position that we didn't have the legal right, notwithstanding the fact that, as Judge Watson found, clearly, but for the alleged invalidity of Section 9A, this transaction would have triggered our rights under Section 9A. So we have a clear breach of the agreement, as well as what we believe is a breach of Section 84F. Very briefly, Your Honor, Section 84F, and our view of Section 84F, is that that first clause that talks about the transfer of a business is not a complete prohibition. It has these requirements of good faith, et cetera. But again, we were never given the opportunity. And the only way there's a serious question in this case, since we were never given that opportunity, is if you interpret that transfer of business provision as a complete ban on the kind of contractual provision we had in Section 9A. And then further, when you look at the second clause, if you will, of Section 84F, which talks about the sale or transfer of a franchise, in our view, common sense suggests that just because the intermediate corporate entity remained the same, the Ohio Glazers entity, I mean it converted to an LLC and a few other things, but effectively it remained the same. But we already have that from the district court. Watson acknowledged that. He didn't make the little distinction that was made in the Cross case. I think he did. I thought you answered that question earlier to say, I think Judge Griffin asked you whether Judge Watson, or it was in your talk anyway, that Watson understood and agreed that it was a change of ownership. Oh, yes. Yes, he did agree that it was a change of ownership. And then the question becomes, our view is because there was a change of control, that is per se sale or transfer of the franchise. Oh, I see. That wasn't. He didn't weigh in on that. I'm sorry about being unclear about that, Your Honor. And here our view is that while the franchise, and we agree, franchise is defined. It's the relationship between the manufacturer and the wholesaler. The interpretation, in our view, of a sale or transfer is one that ought to borrow from the Tri-County case. A functional test focused on control. Tri-County involves Section 85D of the law, which involves transfers among suppliers. But the policies are the same in the Esper case and in the Tri-County case. The court recognized that the legislature, in enacting the franchise law, saw the importance of a supplier knowing with whom it's doing business. And if you look at the Colgate case in the antitrust area and many other precedents, that's a pretty fundamental principle. A company like Great Lakes wants to know with whom it's doing business. Your Honor, I'm sorry that my time is up, and I will now sit down. Thank you. Good morning, Your Honors. May it please the Court. Obviously, abuse of discretion, as this Court has repeatedly recognized, is highly deferential, particularly in the injunction context. But I would like to start with Judge Griffin's question. Well, but of course, the judge doesn't just make an isolated legal decision. He has to consider the entirety of the four factors, which is what Judge Watson did here. And I want to address Judge Griffin's question about what's going on here, right? What is the motivation here? And I will tell you the motivation is not performance issues. It's they have another distributor waiting in the wings. And what has come out in discovery since the injunction is that other distributor is indemnifying them during this litigation. They're paying the legal fees. This is the type of opportunistic behavior that the entire statute was designed to avoid. The statute... If you want to surmise about the next guy, next operation in line, nobody wanted this trouble. They were surprised that they didn't get consent. They weren't asked to consent. And it's right in the agreement. Well, Your Honor, there's two things to that. First of all, they said in an affidavit that's at page 282 of page ID that even if they had been asked for consent, they would not have given it. So it's really a futile question. Because they don't want to do business with a distributor who's a wine distributor. Simple as that, right? No? Well, it's not as simple as that. I'm sure it's not. And they were not looking for... I mean, their other distributor presumably came on the scene after you merged without asking permission, correct? I don't know the exact timing of that. Presumably. Why in the world would that behavior be anything to find fault with and particularly to find fault with in terms of how it might affect the merits of the case? Your Honor, my only point that I was trying to answer with Judge Cook's earlier question is that the operations are the same. They are the same now as they were before. The boots on the ground in Columbus are the same. Doesn't Boston Beer have the same complaint that Great Lakes has? It does, Your Honor. Doesn't that show you that maybe a beer distributor is what the beer manufacturers really want? I mean, this is not just Great Lakes, but you've got Boston Beer as a subject. But it's the same beer distributor that was beforehand. No, it's not. It's a subsidiary of Glacier Southern, which is a liquor and wine distributor. And even though they've got a little subsidiary up in Columbus, it's answerable to Miami now. That's one of their complaints. It's run out of Miami, even though you've got a local warehouse there. It was previously run out of Texas. I'm not quite sure what the problem with Texas was. Exactly. And I do want to point out on the irreparable harm part, Section 10B, which Mr. Sorcini started with, is flatly inconsistent with the statute because it allows for termination without cause. That is per se a violation of the statute. It's kind of like, what does that have to do with whether the parties can contract for this consent provision? I mean, the fact that there might be portions of an agreement that would be susceptible to legal challenge does not mean that the section under consideration is more or less... Well, there is, but there's a couple of responses to that. First of all, 10D, and they've not ever argued that it is actually consistent with the statute. So that would be in violation of the statute. And if the court looks at it from the perspective of under 1333.83, the provision is void. If you talk about the provision being Section 10, then all of this is out the window. They would not have the right to terminate. There's not any issue here concerning just cause determination, correct? Well, no, I think there is. Well, the question is whether or not it was valid to have the consent provision, and it's not prohibited by the statute. And so then you're forced to rely on, what, a case, a case that doesn't even deal with, that deals with a situation where the question was purely a statutory question and there was no contractual provision requiring consent. I mean, that's where you're left. So I think part of my concern about Your Honor's questions is you're seeming to go to the merits, whereas Judge Watson was just focused on the preliminary injunction stage. Well, it's a substantial likelihood of success. I mean, we have to evaluate merits. No, no, no. I understand. I understand. But all you have to show is a substantial question. Say it was murky. Not just a substantial question, but a substantial likelihood of success on the merit to have a preliminary injunction, a remedy in equity, forcing these two companies that don't want to deal with each other, and the court is making them deal with each other, as opposed to having damages flow from it. I mean, requiring parties to do something they don't want to do is pretty extraordinary. We want to do it, Your Honor. But this court has been clear, all you have to do is show a substantial question. And getting back to the Jameson Cross, and I take your point earlier, it is a district court decision. But it is the only decision in Ohio interpreting this particular provision. This court has recognized that if there is a dispute of authority, let's say there's a split amongst the district courts, a district court at a PI stage following one line of that split, that is a substantial question. I cannot view this case as the statute really being the central point in this case. In my view, we just look at the contractual provision, and then we look at whether the statute prohibits it or not. And it does not. So end of story as far as the statute is concerned. It's a peripheral player, not the main one. Well, I would respectfully disagree with that. And I think the issue is, and this goes back to the Jameson Cross interpretation, it's drawing the distinction between the franchise, which is at the second half of 1333.84F, and the alienation of the business. And what the court recognizes is the distinction there is they don't want the distributor going out and just saying, here, I'm going to give my beer distributor agreement to Home Depot, for instance. And that's why there's the consent provision in the second half of the statute. But there is no consent provision in the first half of the statute, and instead it says they must respect our rights and they must proceed in good faith. Isn't Jameson Cross a case where there was no contractual provision and the question was whether there was a statutory right to require consent? Right? Isn't that the issue? It's correct. There was no contract. Well, so what in the world does Jameson Cross have to tell us about this case? Just as the statute has not much to tell us, I don't see that the case has anything really to tell us. I mean, this comes right down to the contract, in my opinion. There's a lot of other stuff, but I'm just not seeing it.  This is Judge Dowd. And even the opinion itself, as much as Judge Dowd was my neighbor, and I know he is no longer with us, but I didn't really appreciate the analysis that went on there. And the fact that it didn't have a contract makes it even less appealing. Well, but I think actually from our perspective it makes it more probative here because you've just got the basic statutory analysis. Judge Dowd was telling us what the statute means. And it never got reviewed by a higher court. It did not. But it has been the law governing distributor-manufacturer relations in Ohio for the last 20 years. It's been the law in that particular district. A federal court. It's not binding on state court. This is a matter of state law. Your client brought to our federal court, rather than going to Ohio, which was, you know, Ohio questions of law are probably better resolved in Ohio court. But, you know, what Ohio does on this, we have to make our best guess of what the Ohio Supreme Court would rule. But what Judge Dowd did is not precedent, I think, at all in Ohio. Well, I think it's not precedent in terms of it's not binding. But it's all Judge Watson had to look at. It was not precedent for the entire district. It was precedent for Judge Dowd. And so, you know, I mean, any other district court, district judge in that district, could have gone a different way, and that view would have been just as valid. But really, it's kind of missing the point to talk about Jamison Cross, it seems to me, very much. But the other point is the General Assembly has come back in and made revisions to this statute. They've never seen fit to say, boy, that's the only decision out there. It's really bad. We're going to overrule it. One worth swatting a fly at, as they might say in Tennessee. Your Honor, what I would say is this. By the way, I do not mean to disparage Judge Dowd's reasoning. Judge Dowd and I went on the district court at the same time, and I have the greatest respect and affection for him. But I think one thing, and Judge Cook was commenting on the analysis there, I think one thing that is helpful in his decision is he's comparing it to other Ohio statutory regimes, the Motor Vehicles Franchise Act, right? And drawing a distinction between the language that is in that statute and the language that is here. And I think that's an appropriate mode of analysis for statutory interpretation. And part of the issue as well at a PI stage, which is the decision being made very early in the case, is trying to preserve the status quo to enable a trial to proceed. And normally, obviously, you and I know this court says, be careful here. Let it play out. This is an unusual deal where we might say, hmm, we'd look at the underpinnings, the contract, right? And what I would say is the trial is set in July in this case. And I think one of the things, and this goes to the irreparable harm, which they don't challenge Judge Watson's factual findings on the irreparable harm, but part of the difficulty here is unscrambling the egg. If you tell us an injunction goes up in smoke and tomorrow in July Judge Watson finds that we win, then how do you unscramble that egg? Well, Judge Watson has to be told what the law is. If he is wrongly interpreting the Ohio franchise law, which I believe he is, he's just going to compound the situation by having a trial, applying his erroneous view of Ohio franchise law. Well, I think this gets back to the question, the merits, I understand. If he has an error of law at this point, I think we've got to correct it even though there's a trial coming down. If I could kind of switch gears here, I know you didn't write the brief, but the brief says that just cause in Ohio is limited to performance breaches and that therefore the breach of the contract cannot be just cause for termination. Is that really what you're arguing? No, I think it's slightly different. I find that hard to believe. Well, what I would say is 1333.85 has some, just cause as a term is not defined, but it has some examples of what is just cause. And then in 1333.86 it has the performance-based requirements. So I think it is fair to say if you're doing something that's in violation of something in 1333.85 or really close to that, or in 1333.86, which is the performance issues, then that's just cause. But I don't think you can go beyond that. Okay, you would concede that just cause is more than a performance breach? I would. I would. And would you concede if the contract were valid as interpreted in conjunction with the Franchise Act, if there were a breach of the contract, that would constitute just cause? I think, Your Honor, if the underlying provision is valid, in other words, the underlying provision that you're breaching, and there's not any other inconsistency with the statute, then I think that's probably okay. That probably would be just cause? Correct. I think, again, it would need to be material. You couldn't include some superfluous clause and say that's a technical violation. So, Your Honor, we respectfully request that you affirm. Thank you. Your Honor, thank you. Just a few important points. On the point about the indemnification, in a three-tier system, by law, Great Lakes has to do business with a distributor. We have no alternative but to find somebody else to do it. And so, of course, it would be business malpractice for my client upon learning that there was this change, and we were not being allowed to approve it, and therefore we had to put in motion a termination to not talk to another distributor. It's simply business reality. On the point about good cause, Your Honor, I thought it was a good question. Just cause? Yes, just cause. In many states, the statutory phrase is good cause, and here it's just cause. There is a provision, and the cases that were cited in the brief really go to the point that a supplier's unilateral economic need doesn't supply just cause. But the very portion of the franchise law, it's Section 85B3, that establishes that principle, also says except in a case where there is a breach of the franchise or a breach of this act. And in our view, both of those things happen. So we think there's just cause supplied here. With that, if you don't have any more questions, I have nothing further. Thank you both for your argument, and we'll consider the case carefully.